UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JAMES COLVIN                                                    CIVIL ACTION

VERSUS                                                          NUMBER: 19-10962

JAMES LEBLANC, ET AL.                                           SECTION: "I"(5)

### REPORT AND RECOMMENDATION

Before the Court is the Rule 12(b)(1)/12(b)(6) motion to dismiss of the Defendants herein, Secretary James LeBlanc of the Louisiana Department of Pubic Safety and Corrections ("DPSC"); Warden Robert Tanner of the B.B. "Sixty" Rayburn Correctional Center ("RCC") in Angie, Louisiana; Brandi LeFeaux, a Corrections Specialist at DPSC Headquarters; and Carolyn Wade, a Records Clerk at RCC. (Rec. doc. 10). Also before the Court is Plaintiff's "[t]raverse" to Defendants' motion. (Rec. doc. 16).[1] For the reasons that follow, it is recommended that Defendants' motion be granted and that Plaintiff's suit be dismissed.

The underlying proceedings in this matter go back several decades.[2] On April 28, 1983, Colvin was found guilty of the crime of armed robbery after trial, by jury, in the First Judicial District Court for the Parish of Caddo, State of Louisiana.[3] On June 2, 1983, Colvin

---

[1] In his traverse to the Defendants' motion, Plaintiff states that Defendants LeBlanc and Tanner are "… hereby withdrawn as … defendant[s] in this complaint." (Rec. docs. 16, p. 5). The Court construes Plaintiff's assertion as a request for the voluntary dismissal of his claims against those Defendants under Rule 41(a)(2) and will recommend that the request be granted, with prejudice. That leaves only LeFeaux and Wade as Defendants to this suit.

[2] Relevant dates and particulars were obtained from the record of this removed case as well as the record of a 28 U.S.C. §2241 habeas proceeding Colvin previously litigated here, *Colvin v. LeBlanc*, No. 18-CV-4982 "I"(5).

[3] In the state-court petition that he filed that was subsequently removed to this Court as the above-captioned matter, Plaintiff described the crime for which he had been convicted as "… a first-time crime of violence in which no one was physically harmed, abused or had to forego (sic) any type [of] counseling sessions." (Rec. doc. 1-1, p. 5). The following excerpt, taken from the Louisiana Second Circuit's opinion affirming Colvin's conviction and sentence, paints a slightly different picture of the circumstances surrounding the armed robbery in question:

was sentenced to 80 years at hard labor without benefit of parole, probation, or suspension of sentence. His conviction and sentence were affirmed on direct appeal to the Louisiana Second Circuit Court of Appeal. *State v. Colvin*, 452 So.2d 1214 (La. App. 2nd Cir), *writ denied*, 457 So.2d 1199 (La. 1984).

On August 23, 1986, not long after arriving at the Louisiana State Penitentiary ("LSP") in Angola, Louisiana, to begin serving his state sentence, Colvin escaped from that institution. He was ultimately captured on September 11, 1986 and was returned to LSP on September 19, 1986, having committed a string of crimes while on the lam. Plaintiff explains that he was thus later transported to the Central District of California where, on December 1, 1986, he was sentenced to terms of life and 15 years after pleading guilty to the crimes of kidnapping and bank robbery that were committed while he was at large. Plaintiff indicates

---

On July 12, 1982, a man entered the Sausage & Cheese Store on Line Avenue in Shreveport. The man, who was armed with a gun, approached the cashier and asked her what time it was. While holding the gun on her he told her it was time to "hit the register" and demanded that she open the cash drawer and give him the money. A male employee handed over the money from the cash drawer. The armed man remained in the store approximately ten minutes threatening the four employees with the gun and forcing them to lie on the floor. At one point during the robbery, he pressed the gun firmly to the forehead of a female employee. Another woman employee was grabbed by the man and thrown to the ground.

*State v. Colvin*, 452 So.2d 1214, 1217 (La. App. 2nd Cir.), *writ denied*, 457 So.2d 1199 (La. 1984).

Among the issues that the Louisiana Second Circuit resolved was Colvin's claim that further sanity-commission testing should have been ordered notwithstanding the trial court's appointment of four doctors, one of whom Colvin refused to be examined by, and another of whom "… found that psychological testing demonstrated evidence of faking or malingering …" *Colvin*, 452 So.2d at 1218. In another assignment of error, Colvin complained of the use of restraints upon him during trial, which was found to be justified based upon his "… prior misbehavior in court and during transportation …," two escape attempts, and aggressive statements toward the judge that resulted in him being "… forcibly removed from the courtroom." *Id.* at 1219. And in rejecting Colvin's excessive-sentence claim, the Louisiana Second Circuit characterized his conduct during the course of the crime as "… terroriz[ing] the victims …" which justified the punishment meted out when coupled with his lack of remorse or regret and his "… lengthy criminal history, consisting of adult and juvenile offenses including both state and federal charges …" *Id.* at 1224.

that he was then sent to USP Leavenworth, Pennsylvania, for service of his federal sentences without any detainer being filed by Louisiana authorities with respect to the remainder of his outstanding 80-year sentence.

The following year, Colvin was transported to the Southern District of Texas where he was tried for another set of crimes that were committed while he was at large. On August 14, 1987, a jury found Colvin guilty of kidnapping, carrying a firearm during a crime of violence, interstate transportation of a stolen car, illegal possession of a gun by a convicted felon, and aiding and abetting, for which he was sentenced on October 30, 1987 to two consecutive terms of life imprisonment, one of which was to be served consecutive to the life term that was previously imposed in the Central District of California, as well as other consecutive sentences totaling 17 years.[4/] Around this time, Colvin alleges that Louisiana officials "gleefully" informed him that he would not be returning to LSP but would instead be spending the remainder of his days at the maximum security federal facility that had been recommended by the sentencing judge. Again, Colvin states that Louisiana filed no detainer to obtain custody of him if he was ever released from federal prison.

Despite the substantial federal jail time that he received, Colvin states that on December 12, 2004, he was paroled to Minneapolis by the U.S. Parole Commission after exhibiting long-term good behavior and earning two college degrees while in prison. Colvin indicates that Louisiana officials were made aware of his release on federal parole and requested that he be jailed pending extradition but a Minnesota judge ruled that Louisiana

---

[4/] As to this set of crimes, notwithstanding Colvin's renewed assertion that "[n]o one was physically harmed, abused, or had to forego (sic) any type [of] counseling sessions," the Court cannot help but notice that per the copy of the judgment and probation/commitment order that he has conveniently provided the Court, he was ordered to pay restitution totaling $9,720.00 to two female victims "covering [their] mental anguish and suffering." (Rec. doc. 1-5, p. 3).

3

had relinquished custody of him in 1987 and "abandoned" the right to "interrupt" his federal sentence which remained active while he was on federal parole. Colvin states that he was released from incarceration pending an appeal by Louisiana officials.

On an unspecified date, Colvin relates that an unidentified parole officer advised him that if DPSC agents appeared in his office, either with or without an extradition warrant, that he would direct the agents to Colvin's residence regardless of the Minnesota judge's ruling. As a result of this, Colvin admits that he absconded from the district, thus violating the conditions of his parole. He ultimately came to be incarcerated at USP Lewisburg where he claims to have completed the "Challenge Program" and otherwise conducted himself admirably while housed at that institution. [5]/ Colvin states that the U.S. Parole Commission reinstated his federal parole upon the completion of the federal sentence he received in Michigan. Once again, Colvin maintains, Louisiana authorities filed no detainer against him.

Thereafter, Colvin states that in June of 2015, federal parole authorities at USP Lewisburg sent to federal parole officials in Shreveport, Louisiana, his halfway house approval paperwork including his pre-sentence report ("PSR"). Upon learning of Colvin's outstanding Louisiana sentence in the PSR, the Shreveport parole officer reportedly notified DPSC of Colvin's impending release. On July 15, 2015, Colvin states that Louisiana officials

---

[5]/ While on parole in Minnesota, Colvin and another individual, Joseph Daniel Williams, robbed a TCF Bank in Ann Arbor, Michigan, and were later prosecuted in the matter entitled *United States v. Colvin*, No. 05-CR-80341-LPZ-DAS on the docket of the United States District Court for the Southern District of Michigan. In the affidavit supporting the criminal complaint in that case, the investigating FBI Special Agent recalled interviewing Colvin following his arrest and being advised by him that a hearing on his extradition back to Louisiana had been scheduled to take place in Minnesota on March 31, 2005, the day following the bank robbery. Colvin later pleaded guilty to the bank robbery charge, a plea he subsequently attempted to withdraw, and on October 3, 2005, he was sentenced to 176 months "to run consecutive to any state sentence." A "Notice of Release and Arrival" form that Colvin appended to his state-court petition reflects that his federal release date was at that time calculated to be April 22, 2016 and that he was to be released pursuant to a "GCT DETAINER" with the Louisiana Department of Corrections being identified as the detaining agency. (Rec. doc. 1-6, p. 3).

filed a "letter" with Lewisburg authorities that "posed" as a detainer. (Rec. doc. 1-2, p. 2). Subsequently, on April 22, 2016, DPSC officials took custody of Colvin outside the front gates of USP Lewisburg without an extradition hearing or a waiver thereof, thereby allegedly committing the federal offense of kidnapping and "interrupting" the running of the federal sentence Colvin was serving under parole supervision.

Colvin indicates that he arrived at the Elayn Hunt Correctional Center ("EHCC") in Louisiana one week later and commenced Administrative Remedy Procedures ("ARP") with respect to the interplay between his state and federal sentences. He points to the DPSC's Master Prison Record as characterizing his time in federal custody from September 11, 1986 to April 29, 2016 as on "Offender Assigned Status," essentially seeking credit against his 80-year state sentence for the time that he spent in federal custody. At the first step of the ARP process, Colvin states that his Master Prison Record was amended in his favor to change his release date from January 1, 2052 to January 1, 2023. However, upon being assigned and transferred to RCC on April 3, 2017, Defendant Wade changed his release date back to 2052 which effectively "enhanced" his 80-year sentence to 110 years and gave him a full-term release date of March 26, 2092. At step two of the ARP process, Colvin was told that the running of his 80-year state sentence stopped when he escaped from LSP and that his state sentence is now to be served consecutive to his federal sentences. The refusal of state authorities to credit his state sentence with the 30 years that he spent in federal custody, Colvin alleges, amounts to an "artificial extension" of his state sentence from 80 to 110 years. For the alleged violation of his Fifth and Fourteenth Amendment rights, Colvin requested an unspecified amount of monetary damages, credit against his state sentence for the 30 years that he spent in federal custody, and an order reinstating him to federal parole supervision.

Upon being served with Plaintiff's state-court petition, the Defendants properly removed the matter to this court on the basis of federal question jurisdiction. (Rec. doc. 1). Since then, Plaintiff's motions to remand and for a default judgment have both been denied. (Rec. docs. 5, 8, 9, 12). Defendants now move for the dismissal of Plaintiff's complaint under 28 U.S.C. §1915(e)(2)(B) and under Rule 12(b)(1) and (6). Defendants posit that they, in their official capacity, are not considered to be "persons" within the meaning of 42 U.S.C. §1983; that Colvin's claims are barred by *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364 (1994) and its progeny; and that Colvin has not pled sufficient facts to show that the Defendants violated any federal or state laws and that they are otherwise entitled to qualified immunity. (Rec. doc. 10). Plaintiff opposes the Defendants' motion on all fronts. (Rec. doc. 16).

Defendants first argue that Plaintiff's complaint should be subject to the screening provisions codified in 28 U.S.C. §1915(e)(2)(B). That statute, which applies to proceedings brought *in forma pauperis*, provides in pertinent part as follows:

> (e)(2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that –
>
> \*   \*   \*   \*   \*   \*
>
> (B) the action or appeal –
>     (i) is frivolous or malicious;
>     (ii) fails to state a claim on which relief may be granted; or
>     (iii) seeks monetary relief against a defendant who is immune from such relief.

Plaintiff argues against the applicability of §1915(e)(2)(B), pointing to an order that was signed by the state-court judge on April 23, 2019 which granted him leave to file his state court petition *in forma pauperis* but assessed him an initial filing fee of $300.00, a fee

6

that he maintains he duly paid as evidenced by a receipt from the state Clerk of Court dated April 29, 2019. (Rec. doc. 16-5, p. 2).

Subsequent to the removal of this case from state court, the Defendants dutifully filed a copy of the entire state-court record pursuant to the Clerk's Office's 28 U.S.C. §1447(b) directive. (Rec. doc. 7, 3). Included within that filing is a copy of the application to proceed *in forma pauperis* that Colvin had filed pursuant to LSA-C.C.P. Art. 5181 to initiate this proceeding in state court. (Rec. doc. 7-3, pp. 3-5). Just like its federal counterpart, 28 U.S.C. §1915, Article 5181 allows an individual, if granted pauper status, to commence a case without <u>prepayment</u> of fees but subject to the payment of an initial filing fee and the deduction of monies from the prisoner's inmate banking account until the entire filing fee is paid. As noted above, on April 23, 2019, the state-court judge granted Colvin's application to proceed *in forma pauperis* but assessed him an initial, partial filing fee of $300.00. (*Id.* at pp. 1-2). Whether Colvin subsequently paid that initial, partial filing fee is immaterial; "§1915(e)(2)(B) … applies to cases removed to federal court in which a plaintiff sought to proceed without prepayment of fees in state court." *Smith v. Gonzalez*, No. 17-CV-0093, 2018 WL 1088003 at *5 (N.D. Tex. Feb. 2, 2018), *adopted*, 2018 WL 1087945 (N.D. Tex. Feb. 26, 2018); *Phillips v. City of Dallas*, No. 14-CV-3131, 2015 WL 233336 at *4 (N.D. Tex. Jan. 14, 2015). Even if that were not the case, because the Defendants in this case are governmental officers or employees, the screening provisions of 28 U.S.C. §1915A apply regardless of whether Plaintiff is proceeding *in forma pauperis* and "… even when the prisoner has paid the required filing fee." *Martin v. Scott*, 156 F.3d 578, 579-80 (5th Cir. 1998), *cert. denied*, 527 U.S. 1041, 119 S.Ct. 2405 (1999); *Smith*, 2018 WL 1088003 at *5. Under the mandatory screening procedures of §1915A, district courts are mandated to dismiss a complaint or any

7

portion thereof if it "is frivolous, malicious, or fails to state a claim upon which relief may be granted" or if it "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §1915A(b).  Irrespective of whether the Court applies §1915(e)(2)(B) or §1915A(b), the result here is the same.

Defendants next argue that state officials, acting in their official capacity, are not considered to be "persons" capable of being sued under 42 U.S.C. §1983.  As such, Defendants maintain that Plaintiff's claim against them for monetary damages under §1983 is barred by the Eleventh Amendment.  For his part, Colvin initially disavows suing the Defendants in their official, as opposed to individual, capacity but argues that even if he did, the Defendants waived the sovereign immunity that they would otherwise ordinarily enjoy under the Eleventh Amendment by removing this matter from state to federal court.

In *Levy v. Office of the Legislative Auditor*, 362 F.Supp.2d 729 (M.D. La. 2005), one of two cases that Colvin cites in his opposition memorandum, the district court found that the defendant had indeed waived Eleventh Amendment immunity by removing the case from state court to federal court. *Id.* at 732-35.  The court went on to find, however, that the defendant was not considered to be a "person" within the meaning of §1983 based on the related but distinct holding of *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 109 S.Ct. 2304 (1989) and dismissed the federal claims against the defendant without prejudice.  *Id.* at 735.[6]  Thus, the very authority relied upon by Colvin establishes that any official-capacity claim against Defendants LeFeaux and Wade is not tenable here under the teachings of *Will*, which provides an independent basis for the dismissal of any such claims against those

---

[6] The other case cited by Colvin, *Meyers ex rel. Benzing v. Texas*, 410 F.3d 236 (5th Cir. 2005), *cert. denied*, 550 U.S. 917, 127 S.Ct. 2166 (2007), was decided on Eleventh Amendment grounds.

8

Defendants under §§1915(e)(2)(B)/1915A(b). *See*, e.g., *Glenn v. State of Louisiana*, No. 08-CV-4817, 2009 WL 382680 at *3 (E.D. La. Feb. 11, 2009).

That brings the Court to the primary basis for Defendants' motion, the bar imposed by *Heck* and its progeny. Stripped to essentials, Plaintiff's claim in the instant matter is that the Defendants have miscalculated his release date by failing to credit his 80-year state sentence with the approximately 30 years that he spent in federal custody. "A Section 1983 claim that challenges the fact or duration of a state sentence 'is barred (absent prior invalidation) … *if* success in that action would necessarily demonstrate the invalidity of confinement or its duration.'" *Wolfe v. Box*, No. 13-CV-0040, 2013 WL 2295735 at *2 (S.D. Miss. May 24, 2013)(quoting *Wilkinson v. Dotson*, 544 U.S. 74, 81-82, 125 S.Ct. 1242, 1248 (2005)). "In such a case, 'a §1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus.'" *Id.* (quoting *Heck*, 512 U.S. at 486-87, 114 S.Ct. at 2372). *Heck* applies to claims challenging the calculation of sentences as well as matters involving jail-time credits, *Edwards v. Balisok*, 520 U.S. 641, 646-48, 117 S.Ct. 1584, 1588-89 (1997), and it matters not whether a plaintiff seeks declaratory, injunctive, or monetary relief if success in the action would necessarily demonstrate the invalidity of a prisoner's confinement or its duration. *Castillo v. Texas Bd. of Pardon and Paroles*, No. 16-CV-0504, 2017 WL 8159335 at *4 (S.D. Tex. Oct. 5, 2017), *adopted*, 2018 WL 1172514 (S.D. Tex. Mar. 5, 2018).

Success on Colvin's claim that the Defendants miscalculated his sentence would necessarily implicate the validity of the duration of his confinement. *Buckhalter v. Hall*, No.

18-CV-0340, 2019 WL 254246 at *2 (S.D. Miss. Jan. 17, 2019); *Wallace v. Texas Bd. of Pardons and Paroles*, No. 18-CV-2743, 2018 WL 6335456 at *2 (S.D. Tex. Dec. 4, 2018). Thus "[i]n order to obtain §1983 relief in this action, [Colvin] must show that any calculation with respect to []his state court sentence, including determinations related to jail time credits, have been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal, or called into question by the issuance of a writ of habeas corpus under §2254." *Castillo*, 2017 WL 8159335 at 4 (citing *Heck*, 512 U.S. at 486-87, 114 S.Ct. at 2372); *see also Newsome v. Texas Bd. of Pardon & Parole*, 124 Fed.Appx. 256 (5th Cir. 2005); *Hernandez v. Tisdale*, No. 12-CV-3387, 2015 WL 1220316 at *6 (S.D. Tex. Mar. 14, 2015); *Wolfe*, 2013 WL 2295735 at *2; *Culotta v. LeBlanc*, No. 10-CV-1690, 2011 WL 806720 at *1 (W.D. La. Jan. 31, 2011), *adopted*, 2011 WL 806675 (W.D. La. Mar. 2, 2011); *Evans v. Caskey*, No. 10-CV-0196, 2010 WL 4392562 at *2 (S.D. Miss. Oct. 29, 2010). As Colvin makes no such showing, his §1983 claim should be dismissed with prejudice until such time as the *Heck* conditions are met. *Johnson v. McElveen*, 101 F.3d 423, 424 (5th Cir. 1996).[7]

---

[7] As to Defendant LeFeaux, her involvement appears to be limited to the issuance of the "Detainer" dated July 15, 2015 which presumably led to DPSC agents taking custody of Colvin on April 22, 2016. As those events occurred more than one year prior to the filing of Colvin's state-court petition, any §1983 claim has prescribed. *Elzy v. Roberson*, 868 F.2d 793, 794 (5th Cir. 1989); *Dixon v. Town of Simmesport*, No. 13-CV-0050, 2013 WL 3167914 at *2 (W.D. La. Jun. 20, 2013)(citing *Jacobsen v. Osborne*, 133 F.3d 315 (5th Cir. 1998)). As for Defendant Wade, she is entitled to absolute immunity for her actions in calculating Colvin's sentence. *Littles v. Bd. of Pardons & Paroles Division*, 68 F.3d 122, 123 (5th Cir. 1995). The Court declines to construe this matter as a habeas proceeding as Colvin makes no showing of having exhausted available state-court remedies with respect to his allegations, *Buckhalter*, 2019 WL 254246 at *2, a requirement that he was made abundantly aware of in his previous §2241 action here. *Colvin v. LeBlanc*, No. 18-CV-4982, 2018 WL 4101008 at *3-5 (E.D. La. Aug. 16, 2018), *adopted*, 2018 WL 4095782 (E.D. La. Aug. 28, 2018).

**RECOMMENDATION**

For the foregoing reasons, it is recommended that Plaintiff's claims against Defendants, Secretary LeBlanc and Warden Tanner, be dismissed with prejudice pursuant to Rule 41(a)(2), Fed. R. Civ. P.

It is further recommended that Defendants' motion be granted and that Plaintiff's claims against Defendants, Brandi LeFeaux and Carolyn Wade, be dismissed with prejudice pursuant to 28 U.S.C. §§1915(e)(2)(B)/1915A(b) and Rule 12(b)(6), Fed. R. Civ. P.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United States Auto. Assoc.*, 79 F.3d 1415 (5th Cir. 1996)(en banc).[8]

New Orleans, Louisiana, this 23rd day of September, 2019.

MICHAEL B. NORTH
UNITED STATES MAGISTRATE JUDGE

---

[8] *Douglass* referenced the previously-applicable 10-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. §636(b)(1) was amended to extend that period to 14 days.